1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11  Jeffrey L. Wissot, DDS,       )   CV 11-10040 RSWL (JCGx)
                                  )
12                 Plaintiff,     )
                                  )   **Statement of**
13       v.                       )   **Uncontroverted Facts and**
                                  )   **Conclusions of Law Re:**
14                                )   **Defendant Great-West**
    Great-West Life and Annuity   )   **Life & Annuity Insurance**
15  Insurance Co. and American    )   **Company's Motion for**
    Dental Association,           )   **Summary Judgment [42]**
16                                )
                   Defendants.    )
17  _____ )

18       After consideration of the papers and arguments in
19  support of and in opposition to Defendant Great-West
20  Life & Annuity Insurance Company's ("Defendant") Motion
21  for Summary Judgment [42], the Court makes the
22  following findings of fact and conclusions of law.
23                    **UNCONTROVERTED FACTS**
24       1.  The American Dental Association ("ADA")
25  sponsors group insurance plans for the benefit of its
26  members.  Defendant's Proposed Stmt. of Uncontroverted
27  Facts and Conclusions of Law ¶ 1.
28       2.  In 1992, the ADA contracted with Defendant to

                                1

1  administer and insure a group disability income
2  protection plan in order to insure qualifying ADA
3  members.  Id.
4     3.  Plaintiff, a member of the ADA, became insured
5  with Defendant under the group policy.  Id. ¶¶ 3, 4.
6     4.  In relevant part, the 1992 version of the group
7  policy defined "Total Disability" as "that due to an
8  accident or sickness, an insured Member is unable to
9  perform the duties of his profession or occupation."
10 Id. ¶ 1.  The 1992 individual certificate issued to
11 Plaintiff contained the following policy language
12 describing the long-term benefits available under the
13 plan:
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28 ///

| Plan II Additional Period | |
|---|---|
| For a **Total Disability** due to accident or sickness which begins: | Amount and Additional Period |
| • before the Member reaches age 50 | • 100% of the Member's Optional Long Term Monthly Income Benefits will be continued to age 65; and<br>• when the Member reaches age 65, his Optional Long Term Monthly Income Benefits will be reduced by 50% and that amount will be continued for life[1] |
| • on or after the Member reaches age 50 but before he reaches age 63 | the Member's Optional Long Term Monthly Income Benefits will be continued after he reaches age 63 but will end when he reaches age 65. |

---

[1] For the sake of clarity, this benefit will be hereinafter referred to as "reduced lifetime benefits".

3

1 | Id. ¶ 3.
2 |     5. The ADA and Defendant subsequently changed some
3 | of the features of the group policy, effective May 1,
4 | 1997. Id. ¶ 4. A new group policy document and new
5 | individual certificates were issued to all covered
6 | members. Id. In April 1997, Defendant mailed a letter
7 | from the ADA's Chairman of Council on Insurance to
8 | insured members to provide notice of the changes to the
9 | group insurance plan. Id.
10 |     6. In July 1996, Plaintiff, then forty-eight-
11 | years-old, was struck by a car while riding his
12 | bicycle, resulting in a torn ligament in Plaintiff's
13 | right (dominant) hand. Compl. ¶ 18; SUF ¶ 6; Pl.'s
14 | Proposed Stmt. of Uncontroverted Facts and Conclusions
15 | of Law ¶ 15.
16 |     7. In 2003 Plaintiff ended his dentistry practice
17 | at the age of fifty-five. SUF ¶ 9. Plaintiff
18 | subsequently submitted a claim for disability benefits
19 | to Defendant, which Defendant paid to Plaintiff. Id.
20 | ¶¶ 6-7.
21 |     8. Plaintiff did not suffer a total disability
22 | before age 50. Id. ¶ 9.

### CONCLUSIONS OF LAW

23 |
24 |     1. Under Illinois law, "when construing the
25 | language of an insurance policy, a court's primary
26 | objective is to ascertain and give effect to the
27 | intentions of the parties as expressed by the words of
28 | the policy." Rich v. Principal Life Ins. Co., 226 Ill.

2d 359, 371 (2007) (citations omitted). Further, "an insurance policy is to be construed as a whole, giving effect to every provision and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract." Id. (internal citations omitted). "All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists." United States Fire Insurance Co. v. Schnackenberg, 88 Ill.2d 1, 5 (1981).

    2. A contract provision is considered ambiguous and will be construed strictly against the insurer who drafted the policy if "the words used in the insurance policy are reasonably susceptible to more than one meaning." Id. However, "a contract is not rendered ambiguous merely because the parties disagree on its meaning." Id. A court should not strain to find ambiguity where none exists. Id. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." Id.

    3. The language in dispute in the instant matter is not ambiguous. In order to receive reduced lifetime benefits after Plaintiff turns age 65, Plaintiff must suffer a "total disability" before he turns 50 years old. Therefore, Plaintiff is not entitled to reduced

5

lifetime benefits under the 1992 group insurance plan.

4. 215 ICLS § 5/155 provides that when a purported tort claim boils down to an insurer's failure to pay, the remedies provided in Section 155 and for breach of contract cover the claim and are sufficient. Sieron v. Hanover Fire & Cas. Ins. Co., 485 F. Supp. 2d 954, 961 (S.D. Ill. 2007). However, Section 155 does not preempt a claim of insurer misconduct if it is based on a separate and independent tort. When a plaintiff alleges and proves the elements of a tort separate from his allegations of an insurer's bad faith or unreasonable and vexatious conduct, "the plaintiff may bring an independent tort action for insurer misconduct." Guarantee Co. of N. Am., USA v. Moecherville Water Dist., N.F.P., No. 06 C 6040, 2007 WL 2225834, at *3 (N.D. Ill. July 26, 2007). Thus, the Court must "go beyond the legal theory asserted and examine the conduct forming the basis for [Plaintiff's] claim[s]" in order to determine whether they comprise independent tort claims or merely allege bad faith or unreasonable or vexatious conduct that is addressed by Section 155. Commonwealth Ins. Co. v. Stone Container Corp., No. 99 C 8471, 2001 WL 477151 at *2 (N.D. Ill. May 3, 2001).

5. It is well established in Illinois that "mere allegations of bad faith . . . without more, do not constitute a separate and independent tort. Such allegations are preempted by [S]ection 155." Burress-

6

Taylor v. Am. Sec. Ins. Co., No. 1-11-0554, 2012 IL App (1st) 110554, at *6-*7 (Ill. App. Ct. Oct. 26, 2012); see also Busse v. Paul Revere Life Ins. Co., 341 Ill. App. 3d 589, 598 (2003) (warning against litigant attempts to make an "end run" around the limits imposed by § 155 by creating a common law action "that remedies the same basic evil"); Combs v. Insurance Co. of Ill., 146 Ill. App. 3d 957 (1986) (holding that a claim for bad faith denial of benefits framed as claim for intentional infliction of emotional distress was preempted by § 155).

    6. Plaintiff's second, sixth, and seventh claims of Plaintiff's Complaint are preempted by Section 155.

    7. In an action for negligence, a plaintiff must set out facts establishing (1) the existence of a duty of care, (2) a breach of that duty, and (3) an injury proximately resulting from that breach. Friedman v. Safe Sec. Servs., Inc., 328 Ill. App. 3d 37, 47 (2002).

    8. Defendant is not liable for negligence.

**IT IS SO ORDERED.**

DATED: June 12 , 2013.

                                      RONALD S.W. LEW
                                **HONORABLE RONALD S.W. LEW**
                                Senior, U.S. District Court Judge